# Graham *v.* Gray.

*Bill in Equity for Injunction of Judgment, and Settlement of Partnership Accounts.*

1. *Accounts between partners, at law and in equity.*—When one partner buys out his co-partner's interest in the partnership, giving his note for the balance of purchase-money not paid in cash, with the understanding that it was subject to abatement on settlement of the partnership accounts, for any balance found in his favor; possibly this defense could not be made at law, against an action on the note, as it involved a settlement of the partnership accounts, and, therefore, the failure to make it does not bar equitable relief against the judgment.

2. *Answer as evidence.*—When an answer is made on oath, as required by the foot-note to the bill, its denials can only be overcome by the testimony of two witnesses, or of one with proper corroboration.

APPEAL from the Chancery Court of Calhoun.
Heard before the Hon. S. K. McSPADDEN.

The bill in this case was filed on the 24th of November, 1885, by J. R. Graham, his wife and daughter, against E. M. Gray and M. T. W. Christian; and sought an injunction against a judgment at law for $284, which the defendants had obtained against J. R. Graham, and a settlement of the accounts of a partnership which had formerly existed between all the parties to the suit. On final hearing, on pleadings and proof, the chancellor dissolved the injunction, and dismissed the bill. The errors assigned are, the refusal of the chancellor to strike the answer from the file on motion, and the dissolution of the injunction.

BROTHERS, WILLETT & WILLETT, for appellants.

E. H. HANNA, contra.

STONE, C. J.—The partnership adventure out of which the present litigation grew, was formed in Calhoun county, Alabama, by persons, all of whom were, at that time, residents of that county. The partners, four in number, and equal in interest, were Gray, Christian, Mrs. Graham, wife of J. R. Graham, and Maggie Wilson, Graham's daughter. In forming the partnership, J. R. Graham represented his wife and daughter, and contributed their share of the capital, less one hundred dollars belonging to Mrs. Graham. With the exception of the said one hundred dollars, Graham appears to have made the investment of his funds as a provision for his wife and daughter, vesting the said interest in their respective names.

The purpose of the adventure was to purchase land in Florida, plant and cultivate an orange grove upon it, and engage in the growth of other products; but of what kind, or with what intent, the record does not inform us. The partnership agreement was entered into in 1882. If it was in writing, that fact is not shown.

In pursuance of the agreed adventure, lands were purchased in Florida, labor, stock and other appliances supplied, and Gray was placed in the management and control of it, at an agreed compensation of sixty dollars per month. He continued in the management and control of it until some time in the year 1883, when Gray and Christian sold out their interests to J. R. Graham, at an estimated value of thirty-six hundred dollars, subject to some rebates. Gray had had charge of the entire enterprise—of its expendi-

[Graham v. Gray.]

tures, and the disbursements of its funds—and knew the state of its accounts. He had handled all its money. In the sale he represented himself and Christian. The trade was made with Graham on the faith of his representation of the expenditures he had made, and of the outstanding liabilities of the partnership. It is not pretended that either of the other partners had any personal knowledge on this subject.

The record facts show, without conflict, that in the purchase from Gray and Christian, Graham paid one thousand dollars cash, gave his note for a second thousand dollars, which he afterwards paid, and gave a second note for five hundred dollars. On this last note he paid two hundred and fifty dollars; and refusing to pay the balance, suit was instituted by Gray and Christian, and judgment recovered upon it. The record does not inform us that the remaining eleven hundred dollars was ever closed by note, or any part of it paid.

The present bill was filed to enjoin the collection of the judgment for the balance of the five hundred dollar note, and a preliminary injunction was obtained. The *gravamen* of the bill, as averred, is, that he, Graham, in his purchase, had to rely, and did rely, on the representations of Gray, as to the amount of capital paid in by Gray and Christian, as to the amount of expenditures in and for the enterprise, and as to the amount of outstanding liabilities against the firm. These last Graham assumed to pay, and it is charged and proved that he had paid them. He charges that Gray misrepresented the facts, and deceived him in two respects: in overstating the amounts he and Christian had paid in, and in reporting as paid certain claims which were unpaid, and which Graham had to pay. He also charged that, among the expenditures Gray claimed to have made for the firm, there were several items incurred for his private use. The bill further charges that, when the note for five hundred dollars was given, it was agreed that it was not to be used or enforced until a settlement of the partnership was had, but that it was to be held subject to such rebates as Graham might be entitled to on settlement of partnership accounts. The bill then charges that Graham has so far overpaid his share of the expenses and debts, as that nothing is due to Gray and Christian on the note on which they recovered judgment. It charges that Christian is insolvent, and that Gray has no property in Alabama. The prayer is, that these alleged over-payments be set off against the judgment,

[Graham v. Gray.]

and for a perpetual injunction. It prays for a settlement of the partnership accounts, as a means, and the only means, of ascertaining whether he had over-paid, and the extent of it.

The bill charges that Gray, while in the paid employment of the firm, had lost considerable time in attending to his own private business, and that he converted one of the mules of the partnership to his own private use, and thereby caused his death. It seeks to bring these items into the partnership settlement, against Gray. It is fully shown, and not denied, that Graham, when he purchased from Gray and Christian, had full knowledge of these derelictions on the part of Gray; and inasmuch as the partnership settlement is material in the present suit only to the extent it affects Graham's liability on the judgment, he can not raise this question. We will not consider it.

The bill was demurred to, assigning several grounds; among them, the failure to make defense at law. Possibly this defense could not be made at law, as it involved a settlement of the partnership accounts.—*Vincent v. Martin*, 79 Ala. 540; *Chandler v. Wynne*, 85 Ala. 301; *Tate v. Evans*, 54 Ala. 16; *Kelly v. Allen*, 34 Ala. 663; *Martin v. Mohr*, 56 Ala. 221; *Bank of Mobile v. Poelnitz*, 61 Ala. 147; *Wood v. Steele*, 65 Ala. 436; *Goldthwaite v. Nat. Bank*, 67 Ala. 549; *Watts v. Sayre*, 76 Ala. 397; *Campbell v. Conner*, 78 Ala. 211; *Glover v. Hembree*, 82 Ala 324.

The pivotal point of this case probably rests on the averment, that when the note for five hundred dollars was given (the note on which the judgment was rendered), it was agreed that it should not be collected or used, but should be kept by the payees, subject to abatement, as the settlement might show the true state of the partnership account. The bill, in its foot-note, calls for sworn answers from the defendants; and they answered under oath, denying that there was any such condition in the giving of the note. This cast on the complainant the burden of overcoming the denials in the answer, by the testimony of two witnesses, or one with proper corroboration. Only one witness, Graham himself, gives testimony in support of this averment of the bill, and it is not corroborated.—*Beene v. Randall*, 23 Ala. 514; *Garrett v. Garrett*, 29 Ala. 439; *Camp v. Simon*, 34 Ala. 126; *Bryan v. Bryan*, Ib. 516; *Easterwood v. Linton*, 36 Ala. 175; *Marshall v. Croom*, 52 Ala. 554; *Turner v. Flinn*, 67 Ala. 529.

So far from there being corroboration of this testimony,

29

two facts tend to weaken it: *First*, Graham paid half of the note, without requiring a settlement; and, second, there were eleven hundred dollars of the purchase-price, above the twenty-five hundred for which cash and notes were given, of which the record gives no satisfactory account. There being a failure to connect the alleged agreement and the note for five hundred dollars, it is not shown that one should discount the other. Nor is it satisfactorily shown that the complainant can not be indemnified in the eleven hundred dollars, which he does not aver he has paid.

Several questions were raised on the equity of the bill, and for misjoinder of parties, which we need not consider.

The decree of the chancellor is affirmed.