WEST LUMBER CO. v. CHESSHER et al. †

(Court of Civil Appeals of Texas. Galveston. March 19, 1912. Rehearing Denied April 18, 1912.)

1. TRESPASS TO TRY TITLE (§ 41*)—ACTION— SUFFICIENCY OF EVIDENCE—IMPROVEMENTS.

Evidence in trespass to try title held to sustain a finding that the improvements on the land were made in good faith by defendants.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 62, 63; Dec. Dig. § 41.*]

2. EVIDENCE (§ 84*)—PRESUMPTION—KNOWLEDGE..

An owner of land is presumed to know his own boundaries.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 106; Dec. Dig. § 84.*]

3. CORPORATIONS (§ 428*)—KNOWLEDGE OF OFFICER.

A lumber company owning land is charged with its president's knowledge of possession thereof by another, and of improvements being made thereon, so that in trespass to try title to recover the land defendant may recover the value of improvements placed thereon in good faith as against a claim by the company that it did not know the improvements were being placed on the land.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1748–1761, Dec. Dig. § 428.*]

4. TRESPASS TO TRY TITLE (§ 57*)—IMPROVEMENTS—RIGHT TO RECOVER.

If the possessor of land believed in good faith that he had good title, he may recover the value of permanent and valuable improvements made thereon in good faith, even though he had no title.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 88; Dec. Dig. § 57.*]

5. TRESPASS TO TRY TITLE (§ 57*)—IMPROVEMENTS—POSSESSION UNDER COLOR OF TITLE.

It is not essential, in order to be a possessor of land in good faith so as to recover for improvements thereon in trespass to try title, that defendant should have held under a written instrument constituting a valid color of title.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 88; Dec. Dig. § 57.*]

6. TRESPASS TO TRY TITLE (§ 57*)—IMPROVEMENTS—DILIGENCE—NECESSITY.

The purchasers of land need not have used due diligence to ascertain whether their vendor had a reasonably valid title or color of title in order to recover for permanent improvements made thereon in good faith in trespass to try title against them.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 88; Dec. Dig. § 57.*]

7. TRESPASS TO TRY TITLE (§ 45*)—INSTRUCTIONS—IMPROVEMENTS.

The court instructed, in trespass to try title, that if defendant company leased parts of the land in controversy from C., and believed in good faith that the tract was upon the 40-acre homestead tract of C., and exercised due diligence to ascertain whether it was a part thereof, and in good faith believed that it had a legal right to hold the land under the lease, the jury should find for defendant company the enhanced value of the land by reason of their improvements, not exceeding the value of the improvements placed upon the land by the company. Held, that the instruction was correct, being authorized by the evidence.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 67; Dec. Dig. § 45.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error denied by Supreme Court.

**8. TRESPASS TO TRY TITLE (§ 45*)—INSTRUCTIONS—IMPROVEMENTS.**

The court instructed, in trespass to try title, that if the possessor of realty has good ground to believe, and does believe, that the title under which he holds is good, and makes permanent and valuable improvements, he will be protected, though his title is worthless, so that if defendant C. took possession of land, and the owner held a certain person out as agent with power to make a contract with C., and if such agent made a contract with C. to procure from the owner a deed to C. when a pending suit was disposed of, and C. took possession and made permanent and valuable improvements, the jury should find for him for the value of such improvements, but, to so find, the jury must believe that C. believed in good faith that the agent had authority to make the contract, and that he exercised ordinary care and diligence to ascertain whether he was acquiring title to the land. *Held*, that the charge was correct, being authorized by the facts.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 67; Dec. Dig. § 45.*]

**9. APPEAL AND ERROR (§ 742*) — PROPOSITIONS.**

Propositions not germane to the assignments of error to which they are made will not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

**10. APPEAL AND ERROR (§ 737*) — ASSIGNMENT OF ERROR—GENERAL ASSIGNMENT.**

An assignment of error in overruling special exceptions 1–29, inclusive, is too general to be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3030–3032; Dec. Dig. § 737.*]

**11. TRESPASS TO TRY TITLE (§ 59*)—PLEADING AND PROOF.**

Where defendants in trespass to try title specifically alleged the various items of improvements for which they sought to recover and the value of each, the amount recovered for improvements is limited to the aggregate of the special items alleged, and they cannot recover more under a general allegation as to the amount of improvements.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 90; Dec. Dig. § 59.*]

**12. TRESPASS TO TRY TITLE (§ 59*)—JUDGMENT—VALUABLE IMPROVEMENTS.**

Rev. St. 1895, art. 5278, provides that where defendant has filed a claim for an allowance of improvements in trespass to try title, and the jury find he is not the owner, but has made valuable improvements in good faith, the jury shall estimate the value of such improvements, not exceeding the increase in value of the premises, and the value of the use and occupation, exclusive of improvements, while defendant was in possession, and the value of the premises without the improvements. Article 5279 provides that, if the sum found for improvements exceeds the damages and the value of the use and occupation, there shall be estimated against defendant the value of the use and occupation and the damages for injury by him, so far as it may be necessary to balance the claim for improvements, but that defendant shall not be liable for any excess beyond the value of the improvements. And article 5280 provides that, if the estimated value of the use and occupation and damages exceeds the value of the improvements, judgment shall be rendered for plaintiff for the excess; but, should the estimated value of the improvements exceed that of the use and occupation and damages, judgment should be entered for defendants for the excess. *Held*, that it was error to enter judgment for defendants for the amount the jury found that the value of the improvements enhanced the value of the land, without finding the respective values of the improvements, use, and occupation.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 90; Dec. Dig. § 59.*]

**13. TRESPASS TO TRY TITLE (§ 59*)—JUDGMENT—EXECUTION.**

Rev. St. 1895, art. 5281, provides that when, in trespass to try title, the lands have been adjudged to plaintiff, and the estimated value of the improvements in excess of the value of the use and occupation and the damages has been adjudged to defendant, no writ of possession shall be issued for one year after judgment unless plaintiff pay to the clerk for defendant the amount of the judgment in favor of him. Article 5282 provides that if plaintiff fail to do so, and defendant should, within six months from the end of such year, pay to the clerk for plaintiff the value of the lands as estimated without regard to the improvements, plaintiff shall be barred of his right of possession. Article 5283 provides that, if defendant shall not within such six months pay over to the clerk for plaintiff such estimated value, plaintiff may sue out his writ of possession as in ordinary cases. And article 5284 requires the judgment to recite the estimated value of the premises without the improvements, and to include the conditions, stipulations, and directions contained in the three preceding articles, so far as applicable. *Held*, that a judgment in favor of defendants for improvements cannot be enforced by the issuance of execution, but can only be enforced in the statutory manner, whether the suit be brought under the statute or by equitable proceedings to recover the value of the improvements.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 90; Dec. Dig. § 59.*]

Appeal from District Court, Trinity County; S. W. Dean, Judge.

Action by the West Lumber Company against John W. Chessher and others. From a judgment in part for plaintiff, it appeals. Reformed and affirmed in part, and reversed and remanded in part.

Hill & Hill, of Livingston, Hayne Nelms, of Groveton, and J. A. Platt, of Trinity, for appellant. Kenley & Minton, of Groveton, and King & King, of Nacogdoches, for appellees.

McMEANS, J. The West Lumber Company, a corporation, sued the defendants John W. Chessher and G. H. Garrison & Co., a firm composed of G. H. Garrison and Lee Garrison, in trespass to try title to recover 490.86 acres of land, part of the H. K. Hardin survey in Trinity county, together with all the improvements on said land, including a stationary sawmill, boilers, engines, pumps, planer, sheds, water tanks, storehouse, dwelling house, etc., which it alleged were erected on said land by defendants without plaintiff's consent. Defendant Chessher answered, disclaiming as to all the land sued for except 5.55 acres thereof described by metes and bounds, for which he prayed judgment, and in the alternative he prayed that he be allowed to recover the value of the

improvements placed by him thereon, alleging the grounds upon which he sought such recovery as an improver in good faith. The defendants G. H. Garrison & Co. also disclaimed any interest in the land sued for except the 5.55 acres claimed by their codefendant, Chessher, and pleaded a lease for five years by them from their said codefendant and the erection in good faith of the sawmill and other improvements described in plaintiff's petition under the bona fide belief that their codefendant, Chessher, was the true owner of the 5.55 acres, and prayed that, in the event plaintiff recovered the land, they have judgment for the value of their said improvements. The case was tried before a jury. Under a peremptory instruction from the court, the jury returned a verdict for plaintiff for all the land sued for, including the 5.55 acres. The issue as to improvements made in good faith was submitted to the jury by a general charge, and upon this issue the jury found in favor of defendants Chessher and G. H. Garrison & Co., for the value of the improvements erected by them, respectively, on the 5.55 acres. No complaint is made of the judgment in favor of plaintiff for the 5.55 acres claimed by defendant Chessher, and the judgment as to it will be affirmed. From the judgment awarding recovery in favor of defendants for the value of their respective improvements, the plaintiff, after its motion for a new trial had been overruled, has appealed.

We shall not discuss appellant's various assignments of error in the order in which they are presented in its brief, but will first consider the thirteenth, which complains of the refusal of the court to give its special charge No. 4, which was a peremptory instruction for it as against all the defendants. Under this assignment appellant advances the proposition, in substance, that as the evidence shows that appellee John W. Chessher had not acquired either title or color of title to the 5.55 acres of land, and that as appellees G. H. Garrison & Co. claimed under a verbal lease from him, therefore defendants had neither title nor color of title to support their plea of valuable improvements made on the 5.55 acres of land, in good faith, and therefore the peremptory charge should have been given. Another proposition under this assignment is to the effect that, to entitle appellees to recover for improvements in good faith, Chessher must have held under an instrument in writing constituting title or color of title, such as a reasonable person, after the exercise of due diligence, would in good faith believe to be a valid title or valid color of title to the land, and further that when G. H. Garrison & Co. leased the land from Chessher and placed improvements thereon, then to entitle them to recover for their improvements they must have exercised reasonable diligence, inquiry, and examination to ascertain that Chessher had a reasonably valid title or color of title, in writing, to the land from the owner or from his agent, legally appointed in writing, to convey. The legal question pervading the propositions is, as we understand it, that no one making improvements upon the land of another, no matter that he acted in perfect good faith in the belief that his title was good, can recover therefor as against the owner, unless he holds under a written instrument constituting a valid title or valid color of title.

[1] Appellant presents no assignment questioning the good faith of either of the appellees in erecting improvements on the land in question, and, had it presented such an assignment, we would be constrained to hold that the evidence warranted the conclusion the jury must have reached that the appellees were improvers in good faith. Briefly stated, the evidence on this issue warrants the following fact conclusions:

Chessher, in 1903, owned 40 acres of the H. K. Hardin survey in Trinity county, which constituted his homestead and upon which he with his family resided. At that time William Carlisle & Co., a partnership composed of William Carlisle and George W. Pennell, owned the balance, or practically the balance, of the survey, as well as a great deal of other land situated in Trinity and adjoining counties. Both Carlisle and Pennell resided in Atchison, Kan.; but they kept an agent in Trinity county, by the name of Sloan, who looked generally after their lands in Texas, and admittedly was authorized to purchase other lands for them. In December, 1903, Chessher, knowing that Sloan was representing Carlisle & Co., offered to purchase the 5.55 acres in question from which practically all the timber had been removed and which adjoined his 40-acre homestead tract. The consideration was $3 per acre, which was its reasonable value at that time. Sloan agreed to sell at that price, but informed Chessher that he could not give him a deed until a certain suit for the land against Carlisle & Co. had been determined, but urged him to enter at once into the possession of the land and place his improvements thereon, agreeing that the purchase price should be paid upon the execution and delivery of the deed, and that the deed would be made upon the termination of the suit. Acting on this agreement, Chessher went into possession and made improvements to the value of the amount found in his favor by the verdict of the jury. The land was surveyed under Sloan's direction after the agreement was made, and Sloan at all times knew that Chessher was in possession and was erecting improvements, and at no time did he raise objection thereto. Chessher at all times honestly believed that Sloan had authority to sell the land, and knew of at least two instances in which he had contracted for the

sale of Carlisle & Co.'s land, and that afterwards deeds had been made by the latter in conformity to the contract, and he believed that he would receive a deed as soon as the suit referred to had been settled, and did not think otherwise until the agreement of Sloan was repudiated by the appellant, West Lumber Company, after it had purchased the lands of Carlisle & Co.

[2, 3] In January, 1910, appellees Garrison leased the 5.55 acres from Chessher for the purpose of erecting a sawmill thereon, believing in good faith that it was a part of Chessher's homestead of 40 acres, the title to which is unquestioned, and at once proceeded to erect, and did erect, improvements thereon of the value of the amount found by the verdict of the jury. Prior to this time, however, the West Lumber Company, appellant, had purchased all the lands of Carlisle & Co., including the 5.55 acres in question. While Garrison & Co. were erecting their sawmill and other improvements, J. M. West, the president of appellant company, was on the ground, at least on one occasion, saw the improvements being erected, made suggestions as to the proper construction of certain parts of the mill, discussed with Garrison & Co. the matter of the construction and location of a switch from the railroad (which had recently been built through a portion of the 5.55 acres) to better expedite shipments of lumber from the mill, and although he was informed that the improvements were being made upon the land of the appellant, West Lumber Company, he did not claim the land for his company, nor make any objection to its use by either Garrison & Co. or Chessher. He stated in his testimony that at that time he did not know the land in question was a portion of that purchased by his company from Carlisle & Co. We think, however, that under the principle that one who is the owner of land is presumed to know his own boundaries (Russell v. Hunnicutt, 70 Tex. 660, 78 S. W. 500), coupled with the fact that the West Lumber Company was charged with such knowledge of the possession of the 5.55 acres by Garrison & Co., and of the improvements being then made thereon by them as its agent, the president of the company had, it cannot be heard to say that it did not know that such improvements were being made on its land.

We think it is clear that, under the facts above stated, appellees were improvers in good faith, and as such were entitled to recover the value of the improvements so made by them, unless appellant's contention be sound that, before appellees can recover the value of such improvements, the appellee Chessher must have held under some written instrument constituting a valid title or valid color of title to the land and that the appellees Garrison & Co. must have exercised reasonable diligence, inquiry, and examination to ascertain that Chessher had a reasonably valid title or color of title, in writing, to the land, from the owner or from his agent, lawfully appointed in writing, to convey. We think this contention cannot be sustained. In an early decision it was held that one cannot be a possessor in good faith who acquires the possession from another who had no power to give it, if he either knew, or by the use of proper diligence might have known, the want of power in his vendor; that one who assumes the authority to sell the land of another must produce his power of attorney; and that one who buys from an agent must look to his authority, because he is not the apparent owner, and his right to sell depends on the existence and validity of the power under which he assumes to act. Robson v. Osborn, 13 Tex. 298. The above doctrine is sound with the respect to the purchase of the land when the title alone is involved, but is not regarded as the law at this time with respect to the bona fides of the improver. In a later case the justice who wrote the opinion in Robson v. Osborn, speaking of the doctrine announced in that case, says: "I have since had reason to doubt the correctness of its application in that case, and I think it proper to express this doubt in order that the case of Robson v. Osborn may not be thought to conclude that question in any case which may hereafter arise." Dorn v. Dunham, 24 Tex. 380. The case of Robson v. Osborn has not only been questioned, but referred to and practically overruled, in House v. Stone, 64 Tex. 684, McDaniel v. Needham, 61 Tex. 274, and French v. Grenet, 57 Tex. 279. In Dorn v. Durham, a broad and liberal rule is laid down, whereby a possessor in good faith, who makes permanent and valuable improvements, will be protected, though it may turn out that his title is wholly worthless.

[4] The rule in this state as laid down by our Supreme Court is this: That if, under all the facts and circumstances, the possessor had good ground to believe, and did believe, that the title under which he entered was good, and, acting on such belief, he in good faith made permanent and valuable improvements, which enhanced the value of the realty, he is entitled to protection, even though the power under which the sale was made was wanting and his title is worthless. Van Zandt v. Brantley, 16 Tex. Civ. App. 420, 42 S. W. 619, and authorities cited. The facts in the case cited are similar to the facts in this case. Briefly stated, they are that Abernathy, as agent of Van Zandt, contracted to sell to Brantley certain land at a price lower than he was authorized to sell it. He had no written authority to make sales. Brantley went upon the land and made permanent and valuable improvements, whereby the value of the land was enhanced. The improvements were made by Van Zandt under the honest belief that the agent had the authority to make the contract

of sale. Afterwards Brantley tendered to Van Zandt a portion of the consideration which he had agreed to pay, and then for the first time learned that Abernathy had no power to make the sale upon the terms he had agreed to. Van Zandt then sued Brantley for the recovery of the land, and Brantley pleaded and sought to recover the value of the improvements made in good faith by him on the land. Van Zandt recovered the land, and Brantley recovered the amount that his improvements had enhanced its value. In deciding the case, Judge Lightfoot, after stating the rule laid down by our Supreme Court, above given, says: "Appellee went upon the property, laboring a year, placing permanent improvements upon it. The agent knew he was there making the improvements on the faith of his contract, and both principal and agent remained silent, allowing appellee's money and labor to enhance the value of the property, and for the first time, when he came to make his payment, the agent notified him that appellant would not carry out the contract. If appellant had no actual knowledge of the facts, this should not prevent him from recovering the land, but they are entitled to no more. The improvements thus expended in good faith they should not recover."

In Cole v. Bammel, 62 Tex. 117, it is held that the mere fact that a party buys from one who he knows has no power to sell is not sufficient to make him a possessor in bad faith. "There may be attending or subsequent circumstances which will relieve the possession of such a character, and entitle the vendee to pay for his improvements." So in Hill v. Spear, 48 Tex. 583, and Berry v. Donley, 26 Tex. 737, it is held that one who buys, knowing that his vendor has a deed from a married woman defectively acknowledged, may be a possessor in good faith.

[5, 6] We think the authorities refute the contention of appellant that the appellee Chessher, to be a possessor in good faith, must have held some written instrument constituting a valid title or valid color of title, and that the other appellees must have used due diligence to ascertain whether Chessher had a reasonably valid title or color of title. But there is another principle, founded in equity and independent of the statute providing for the payment of improvements made by a possessor of land in good faith, that should bar the appellant from recovering the improvements made by appellees Garrison & Co. thereon unless it should pay therefor. As before shown, J. M. West, the president of appellant, was on the land when said appellees were making their improvements, saw that the improvements were being made, made suggestions as to the proper construction of certain parts of the sawmill, discussed with them the matter of the construction of certain parts of the sawmill, discussed with them the matter of the construction and location of a switch from the railroad to the mill, and was informed by his agent, Sloan, that the mill and other improvements were being erected on the land of his principal; yet he did not, for his principal, claim the land or make any objections to the erection of the improvements, but allowed the work to proceed. The appellant never claimed the land or made objection to the use of it by said appellees until all the improvements were completed, and then brought suit to recover, not only the land, but the improvements as well. This defense was specially pleaded.

In Saunders v. Wilson, 19 Tex. 202, Justice Hemphill, speaking for the court, says: "It is a familiar principle of equity, independent of the statute, that if the true owner stands by and suffers improvements to be made on his land, without notice of his title, he must pay for the improvements, on the maxim that he ought to have spoken when he was silent. * * * And on the rule of natural justice, that no one should be enriched by the loss or an injury of another." Continuing, he says: "I allude to this particularly to show that, in cases of this character, the owner may conclude himself by his own acts, and relieve the defendant from the necessity of proving, with such strictness and fullness as would be otherwise required, that he entered under what he believed to be a valid title to the land." See, also, Van Zandt v. Brantley, 16 Tex. Civ App. 420, 42 S. W. 617.

In Wood v. Cahill, 21 Tex. Civ. App. 40, 50 S. W. 1072, the Dallas Court of Civil Appeals says: "It is well to bear in mind, however, that the right to recover the value of the improvements placed upon the land of another in good faith does not arise wholly upon our statute above referred to, but exists under the principles of equity, independent of such statute."

The assignment is overruled.

[7] Appellant by its tenth assignment complains of the refusal of the court to give to the jury its first special charge. In this charge appellant lays down what it conceived to be the principles applicable to the right of appellees Garrison & Co. to recover the value of the improvements made by them on the land. On this issue, and as applicable to the right of Garrison & Co. to recover, the court charged the jury as follows: "If you find from a preponderance of the evidence that the defendant G. H. Garrison & Co. made a contract leasing portions of said land from John W. Chessher, if you believe from a preponderance of the evidence that John W. Chessher was in possession thereof, the said G. H. Garrison & Co., from all the facts and circumstances in evidence in this case, in good faith believed and did believe that the said tract of land was upon the 40-acre homestead

tract of the said John W. Chessher, and if you believe from a perponderance of the evidence that they exercised due diligence to ascertain whether the said land was a part of the said 40-acre tract of land belonging to the said John W. Chessher, and if you believe from a preponderance of the evidence that G. H. Garrison & Co. in good faith believed that they had a legal right to hold said land under said lease contract, if any, then you will find for the defendant G. H. Garrison & Co. the enhanced value of the land by reason of such improvements not exceeding the value of the improvements so placed upon said land by the said G. H. Garrison & Co." We think this charge was correct as applied to the facts of the case, and that the court did not err in refusing to give the charge requested.

[8] The eleventh assignment is based on the refusal of the court to give appellant's special charge No. 2. In this charge appellant states what it conceived to be the rule applicable to the right of appellee Chessher to recover the value of the improvements placed by him upon the land. On this issue the court charged the jury as follows: "If, under all the facts and circumstances, the possessor of real estate has good ground to believe, and does believe, that the title under which he holds is good, and acting on such belief, he, in good faith, makes permanent and valuable improvements which enhance the value of the realty, he is entitled to protection, even though the power under which the sale was made was wanting, and his title is worthless, and so, in this case, if you believe from a preponderance of the evidence that the defendant John W. Chessher entered into possession of the land in controversy, and that theretofore L. T. Sloan was the agent of the owners of the land, William Carlisle & Co., and that such owners held him out as their agent with power to make such contract, and if you find from a preponderance of the evidence that the said L. T. Sloan made a contract with the said John W. Chessher to procure from the said William Carlisle & Co. a deed to the land in controversy, conveying same to said John W. Chessher when the suit of E. A. Ferguson et al. v. William Carlisle & Company et al., then pending in the district court of Trinity county, was disposed of, and in terms as set out in the answer of the said John W. Chessher filed herein, and that the said John W. Chessher entered into possession of said land and was placed in possession thereof by the said L. T. Sloan, and made permanent and valuable improvements upon the same, then you will find for the said defendant John W. Chessher for the value of such improvements so placed by him upon said land, not to exceed the enhanced value of said land by reason of such improvements that you find from a preponderance of the evidence, and not exceeding the value of the improvements so erected

and placed thereon by said John W. Chessher, as set out in the said answer of the said Chessher. But before you could find for the said John W. Chessher under this paragraph of these instructions, you must find that he in good faith believed that the said Sloan had authority to make such contract; that such contract was in fact made; and that he exercised ordinary care and diligence to ascertain whether he was acquiring title to such land by reason of all the facts and circumstances in evidence in this case." We think this charge was correct as applied to the facts, and that the court did not err in refusing to give the requested charge.

[9] Other propositions made under the tenth and eleventh assignments are not germane to the assignments and will not be considered, and still others which have been sufficiently disposed of by the disposition we have made of the thirteenth assignment.

[10] Appellant's ninth assignment complains of the action of the court in overruling plaintiff's special exceptions Nos. 1 to 29, inclusive. That this assignment is too general to authorize our consideration of it is too well settled to require citation of authorities.

[11] The nineteenth assignment complains that the verdict is excessive, and this assignment must be sustained. The jury by its verdict found that the value of the improvements placed by Garrison & Co. on the land enhanced its value $6,000. These appellees alleged generally that the value of the improvements made by them was $6,510, and that the same had enhanced the value of the land in the sum of $6,494.35. But in specially alleging the various items of improvements and the value of each, the aggregate amount was shown and alleged to be $5,510. We think the special allegations should control as against the general, and that appellees are confined in the amount they are entitled to recover to the amount so specially alleged. The judgment will be reformed, therefore, so as to fix the value of the improvements of Garrison & Co. at the amount specifically alleged by them, viz., $5,510.

We have now disposed of all the assignments of error presented by appellant in its brief, none of which requires a reversal of the judgment.

[12, 13] But there is a fundamental error of law apparent upon the record that requires our consideration. The court rendered judgment in favor of defendants against the appellant for the amount which the jury found the value of their respective improvements enhanced the value of the land and ordered the issuance of execution for the enforcement thereof.

Article 5278, Revised Statutes 1895, requires that, where the defendant has filed a claim for an allowance for improvements, if the court or jury find that he is not the rightful owner of the premises sued for, but

that he and those under whom he claims have made permanent valuable improvements thereon, being possessors thereof in good faith, the court or the jury shall at the same time estimate from the testimony: "(1) The value at the time of trial of such improvements as were so made before the filing of the suit, not exceeding the amount to which the value of the premises is actually increased thereby. (2) The value of the use and occupation of the premises during the time the defendant was in possession thereof (exclusive of the improvements thereon made by himself or those under whom he claims) and also, if authorized by the pleadings, the damage for waste or other injury to the premises committed by him, etc. And (3) the value of the premises recovered without the improvements made as aforesaid."

Article 5279 provides: "If the sum for the improvements exceeds the damages * * * and the value of the use and occupation as aforesaid, there shall then be estimated against him, if authorized by the testimony, the value of the use and occupation and the damages for injury done by him or those under whom he claims for any time before said two years, so far as may be necessary to balance the claim for improvements, but no further, and he shall not be liable for the excess, if any, beyond the value of the improvements."

Article 5280 provides: "If it shall appear from the findings of the court or jury, under the two preceding articles, that the estimated value of the use and occupation and damages exceeds the estimated value of the improvements, judgment shall be entered for the plaintiff for the excess and costs in addition to a judgment for the premises; but should the estimated value of the improvements exceed the estimated value of the use and occupation and damages, judgment shall be entered for the defendant for the excess."

By article 5281 it is provided: "In any action of trespass to try title, when the lands or tenements have been adjudged to plaintiff, and the estimated value of the improvements in excess of the value of the use and occupation and damages has been adjudged to the defendant, no writ of possession shall be issued for the term of one year after the date of judgment, unless the plaintiff shall pay to the clerk of the court for the defendant the amount of such judgment in favor of the defendant with the interest thereon."

Article 5282: "If the plaintiff shall neglect for the term of one year to pay over the amount of said judgment in favor of the defendant, with the interest thereon, as directed in the preceding article, and the defendant shall within six months after the expiration of said year, pay to the clerk of the court for the plaintiff the value of the lands or tenements without regard to the improvements, as estimated by the court or jury, then the plaintiff shall be forever barred of his writ of possession, and from ever having or maintaining any action whatever against the defendant, his heirs or assigns, for the lands or tenements recovered by such suit."

Article 5283: "If the defendant or his legal representatives shall not, within the six months aforesaid, pay over to the clerk for the plaintiff the estimated value of the lands or tenements, as directed in the preceding article, then plaintiff may sue out his writ of possession as in ordinary cases."

Article 5284: "The judgment or decree of the court shall recite the estimated value of the premises without the improvements and shall also include the conditions, stipulations and directions contained in the three preceding articles, so far as they may be applicable to the case before the court."

The court did not in its charge require the jury to find, and the jury did not find, the value of the land without the improvements, nor the value of the use and occupation of the land exclusive of the improvements, during the time defendants were in possession, nor the damages done by defendants to the land while in possession. The fundamental error consists of the rendition of a judgment against the plaintiff for the amount that the improvements enhanced the value of the land, and awarding execution for the enforcement of such judgment instead of rendering such a judgment as the statute requires; that is to say, that no writ of possession should issue in favor of plaintiff for the term of one year after the date of judgment, unless the plaintiff shall pay to the clerk of the court for the defendants the amount of the judgment in their favor with interest, provided that if the plaintiff neglect for the term of one year to pay said amount, with interest, and the defendant shall within six months after the expiration of said one year pay to the clerk of the court the value of the 5.55 acres of land, without regard to the improvements, then plaintiff shall be forever barred of his writ of possession, or from ever having or maintaining any action whatever against the defendant, his heirs or assigns, for the land recovered by its suit, and provided further that if the defendants or their legal representatives shall not within six months, as aforesaid, pay over to the clerk, for plaintiff, the estimated value of the land, exclusive of the improvements, then the writ of possession to issue as in ordinary cases. The statute having provided the method of enforcing a judgment where the plaintiff recovers the land and the defendant recovers the value of improvements made thereon in good faith, that method must be followed. Wortham v. Boyd, 66 Tex. 406, 1 S. W. 109; Collins v. Kay, 69 Tex. 367, 6 S. W. 313.

In no event can such a judgment in favor of the defendant be enforced by the issuance of execution as was ordered in this case. The statutory method of enforcement must

be observed in all suits of the character of this, those brought under the statute as well as those brought under equitable proceedings to recover the value of improvements independently of the statute. As there was no finding by the jury as to the value of the land exclusive of the improvements, or as to the value of the use and occupancy of the land exclusive of the improvements during the time appellees were in possession, or of the damages done to the land, if any, during said time, we are without data to enable us to reform and enter a proper judgment here.

The judgment in favor of plaintiff for the land sued for is affirmed, and the judgment in so far as it fixes the amount that Chessher's improvements enhances the value of the land is also affirmed, as is also the judgment in favor of Garrison & Co. as reformed by this court, and the judgment is otherwise reversed, and the cause remanded, with instructions to the trial court upon another trial to confine the issues to an ascertainment of the value of the land at the time of filing of the suit independently of the improvements, the value of the use and occupancy of the land during the time appellees held possession of the same, the damages done to the land by appellees during the time of their possession, if any, and upon such ascertainment by the court or jury to deduct the value of the use and occupancy in the amount of damages, if any are found, from the sum fixed as the value of the improvements of the appellees, and to enter a proper judgment in conformity with articles 5281, 5282, and 5283, Revised Statutes 1895.

Reformed and affirmed in part, and reversed and remanded in part, with instructions.